# CIRCUIT COURT OF LOUDOUN COUNTY

In re Sadie Irene Reid

March 29, 1999

Case No. (Chancery) 18941

BY JUDGE JEAN HARRISON CLEMENTS

This case came before the Court for hearing on March 23 and 24, 1999, upon the Petition of Nancy Reid Aronhalt filed January 26, 1999 (and Supplemental Petition) pursuant to Virginia Code § 37.1-134.8. The Plaintiff prays for the appointment of a perpetual guardian and conservator for Sadie Irene Reid and seeks to be the person appointed. The Court appointed Rhonda Wilson Paice as Guardian ad Litem for Sadie Irene Reid by order entered January 26, 1999, pursuant to § 37.1-134.9. Personal service of process was effected on Ms. Reid on February 8, 1999, and by mail to her adult children and siblings on February 8, 1999, as required by § 37.1-134.10. On March 11, 1999, on the motion of the Guardian ad Litem, the Court appointed Stephen P. Robin, Esq., as Counsel for Ms. Reid pursuant to § 37.1-134.12.

At the hearing in this case, Defendant made no request for a jury trial, was present, called witnesses on her behalf, and herself testified and confronted and cross-examined witnesses. The proposed Guardian/Conservator attended and gave a recommendation as to living arrangements and treatment plan for Ms. Reid pursuant to § 37.1-134.13. The Guardian ad Litem was present and had previously filed a Report and in her report and closing argument addressed the specific factors of § 37.1-134.9(C).

At trial, the Court heard testimony from Kathleen Pelkofski, Certified Nurse Practitioner in the office of Dr. John Cook; Mary Elizabeth McCauley, Assistant Vice President of Middleburg Bank in Purcellville; the Plaintiff, Nancy Reid Aronhalt; Butch Aronhalt, Defendant's son-in-law; and Dr. John Cook, Defendant's primary care physician; all for the Plaintiff. The Court received into evidence, without objection, the evaluation reports of Dr. John

H. Cook, III, dated December 29, 1998; Dr. Robert Verdile, Clinical Psychologist, dated January 7, 1999; Dr. Boyd A. Dwyer, M.D., neurologist, dated October 5, 1998; and Dr. Arthur S. Rosecan, M.D., Geriatric Psychiatrist, pursuant to § 37.1-134.11.

Witnesses for Ms. Reid included Terry Lynn Renner, geriatric physical therapist and licensed practical nurse in nursing rehabilitation at Heritage Hall Nursing Home in Leesburg; Patricia Causey, Director of Social Services at Heritage Hall; Patricia Frances Jenkins, Manager, First National Bank of Maryland in Leesburg; and herself. Following the evidence and argument by counsel, the case was taken under advisement by the Court.

Pursuant to § 37.1-134.13, the Plaintiff has the burden of proof by clear and convincing evidence that Defendant is incapacitated and in need of a guardian or conservator. In determining these issues and any powers and duties, the Court is mandated to consider six factors. Finally, as to the guardian or conservator, the Court is mandated to give due deference to the wishes of the Defendant.

Ms. Reid is 87 years old. Her medical condition is complex and includes congestive heart failure with A-Fib; myelodysplastic syndrome (anemia); normal pressure hydrocephalus, which is progressive; coronary artery disease; multifactorial dizziness and suspected cerebrovascular insufficiency; and diabetes mellitus. Dr. Cook refers to 17 conditions or diseases. Dr. Verdile describes "mild dementia with decline in memory function" and "ability to function in 'new learning' situations." These are more than the mere aging process. Dr. Cook also describes Ms. Reid as having mild dementia of the Alzheimer's type.

Ms. Reid has, until recently, lived in her home alone in Purcellville. It is a three-story home with her bedroom and bath on the second floor and her freezer, washer, and dryer in the basement. Both sets of steps are open on one side and narrow.

In the last year or so and getting progressively worse, Ms. Reid has fallen while alone and could not get up, injuring herself on occasion; has dizziness; has not been cooking or cooking well; has been malnourished; is failing to take medications or shots consistently; frequently becomes confused, disoriented, agitated, weak, unable to walk without shuffling or holding onto walls or other objects; becomes lost; is sometimes paranoid and delusional; has driven her car dangerously; is unable to complete her banking without assistance to fill out forms and add her deposits; has some loss of control of urinary and bowel functions; is unable to do laundry or house clean; or grocery shop alone.

Most significantly, Ms. Reid has adamantly refused to leave her home and refused to modify her home. She refuses any awareness or acceptance of the limitations imposed upon her by her medical and mental conditions and such aids as life line, a walker, in-home care, or assisted living. Although Ms. Reid testified she would agree for someone to look in on her a couple of times a day and use a walker, and Dr. Cook opined that might be adequate, the Court is not persuaded.

Ms. Reid has no advance directives or durable power of attorney. She will not agree to modify her home or in-home needs to retain maximum self-reliance and independence.

Plaintiff strongly believes assisted living is necessary for her mother's health and safety. Dr. Cook and Dr. Rosecan agree. This alternative also provides socialization, which Plaintiff and Dr. Cook agree is extremely beneficial.

The Court takes note that all of the evidence about Ms. Reid is that she has been strong, strong-willed, independent, stubborn, and a loner all of her life, not just because of her current circumstances. She does not want to be an old person or dependent on anyone or anything. And her home is "her life." Her financial affairs are very private, and while I agree she has pretty well handled her few long-time monthly bills, as Plaintiff and Dr. Cook testified, she has no present ability to understand the process and decisions which will be medically and financially necessary for her continuing medical care, safety, and other day-to-day needs.

Dr. Rosecan summarizes Ms. Reid's condition and needs as follows, "because of the patient's current mental status and the details about her medical and cognitive condition ... she lacks the mental capacity to competently make decisions regarding her medical care, financial decisions, and general life decisions such as where she can safely live and what level of assistance that she will require." He concludes that "because of the progressive nature of her medical conditions and her long-term rigid personality structure, she is unlikely to regain her capacity in these areas."

A guardian or conservator for Ms. Reid will need to make all decisions and arrangements for her daily living and safety needs and accomplish the necessary financial arrangements therefor and preserve her estate so that it will be forthcoming to meet her needs and pleasures.

For all of the aforesaid reasons, the evidence is clear and convincing that Sadie Irene Reid is incapacitated as defined in § 37.1-134.6 and in need of a guardian and conservator.

Ms. Aronhalt, Ms. Reid's daughter and the Plaintiff, seeks to be appointed as perpetual guardian and conservator. The Guardian ad Litem argues for a co-guardian and conservator or limited guardian and conservatorship and opposes the Plaintiff being in those sole capacities. Ms. Reid's attorney argues against the Plaintiff and for a limited guardian and conservator only.

Ms. Reid herself said, "No way," to Plaintiff, that she is trying to run her life, meddle in her life, and will not communicate. She has told others that she does not trust the Plaintiff, that she only wants her CDs and to get her money. In his testimony, Dr. Cook opined that he was not sure Plaintiff and Ms. Reid could repair their relationship and that her role should be to aid, be a "loving warrior," and "pick up the pieces."

First, the Court should say that there is not one scintilla of evidence that Plaintiff is dishonest or ill-motivated. In fact, the evidence, except for Ms. Reid's statements, is entirely to the contrary. The best evidence is that Plaintiff, from her own funds, paid a $2,000.00 bill of Heritage Hall because Ms. Reid could not or would not pay it in December.

Ms. Reid has always been a loner, strong, strong-willed, independent, and stubborn. She has also been a person who does not trust others, is unreasonably private, does not express emotion and love, and becomes angry with those who oppose her or her way. This includes her daughters, one of whom, Emily Karam, she has not seen or spoken to for 32 years.

Plaintiff testified that over the years, as now, her mother has gotten angry at her and not called or spoken for varying periods of time. She has always eventually rekindled a relationship, and in the last year or so, Ms. Reid has relied on Plaintiff and her husband to assist in every need. And they have continuously responded. Although Ms. Reid has never made her financial circumstances known to the Plaintiff and does not want to now, the Court's order will, of necessity, now give her that information.

Plaintiff has researched information about her mother's conditions and needs, consulted with health care providers, explored many living options and their costs, and always speaks with both candor and compassion about her mother. Plaintiff has also given thought to the need for services of other professionals in handling Ms. Reid's finances and estate so that, as she put it, her funds will be sufficient to meet her needs and wants.

The statutes in question do not define a "suitable" person other than perhaps to take into account the factors earlier discussed. *Black's Law Dictionary* (4th ed.), defines "suitable" as "fit and appropriate for the end in view." Finally, the Court must give "due deference to the wishes of the respondent. Ms. Reid's wishes as articulated have been recited herein. As

mentioned, the Court cannot defer to her stated wish that Plaintiff no longer know her finances. Ms. Reid's stated wishes about Plaintiff running her life or meddling are considered as well as her stated wish "No way" should Plaintiff be involved.

Even if the Court appoints a third party, the order to be entered must, of necessity, count upon and rely upon Plaintiff's continued active support of her mother as she has always done in the past, and the evidence strongly suggests that despite her words and feelings today, to the contrary, Ms. Reid will again be receptive of the love, care, and attention the Plaintiff has to give. Finally, the evidence also is clear that Ms. Reid would reject anyone whom she sees as taking her from her home or meddling in her life and financial affairs.

Plaintiff is a suitable person to be appointed guardian and conservator. The Court shall appoint her to be guardian and conservator of her mother, Sadie Irene Reid, and direct only that she consult with Ms. Reid and keep her informed on all matters requiring her decision.

Further proceeding should be had to determine the assets of the estate and bond for the guardian and conservator.